United States District Court
Northern District of California

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

DERON MATUKOL WILLIAMS,

    Defendant.

Case No.: CR 12-0600 PJH (KAW)

DETENTION ORDER

## I. BACKGROUND

Defendant Deron Matukol Williams is charged in an indictment with armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d).  On August 1, 2012, the Government moved for his detention pursuant to the Bail Reform Act, and asked for a hearing as permitted by 18 U.S.C. § 3142(f).  Pretrial Services prepared a full bail study, which recommended that Defendant be detained.

The undersigned held a detention hearing on August 20, 2012.  Assistant United States Attorney James Mann appeared on behalf of the Government.  Defendant was present and in custody, and represented by attorney Dennis Roberts.  Probation Officer Carol Mendoza was present.  For the reasons stated below, the Court orders that Defendant be detained.

## II. LEGAL ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release.  If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or danger to the community.  Close cases should result in release: "[t]o give effect to the principle

1

that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

A person facing trial generally shall be released if some "condition, or combination of conditions . . . [can] reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). In non-capital cases, pretrial release should be denied "[o]nly in rare circumstances." *Motamedi,* 767 F.2d at 1405; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f). At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person. *Id.* The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767 F.2d at 1405.

In evaluating whether pretrial release is appropriate, a court must consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407. The Ninth Circuit has held that the weight of the evidence should be treated as the least important factor. This guards against the possibility of making a "preliminary determination of guilt" that then leads to punishment in the form of a refusal to grant release. *Motamedi*, 767 F.2d at 1408. "The [] factor may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Id.*

The charges against Mr. Williams include a violation of 18 U.S.C. § 2113(d) (armed bank robbery). This charge gives rise to a rebuttable presumption of detention pursuant to 18 U.S.C. § 3142(e)(1). The presumption of detention shifts the burden of *production* to the defendant; the ultimate burden of persuasion remains with the government. *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

**A. The Nature and Circumstances of the Offense and Weight of the Evidence**

The indictment charges that between October 5, 2011, and March 22, 2012, Defendant robbed banks on nine different occasions. During many of these robberies, Defendant is alleged to have pointed a gun at the bank tellers.

As such, the nature and circumstances of the offense are disturbing and raise a significant possibility that Defendant would pose an unmitigable danger to the community should he be released. Thus, the nature and circumstances of the offense weigh heavily in favor of detention.

According to the affidavit accompanying the criminal complaint, Defendant's DNA is a possible match to DNA on a hat similar to one that was used in the robbery, and to DNA on another hat that was dropped by a man wearing an outfit similar to the robber's outfit; Defendant lives near an address where a mask similar to one used in a robbery was delivered, and a man arrived in a vehicle to pick up the package from the mail carrier; and Defendant is similar in build to witnesses' description of the robber. Witnesses to the first bank robbery, where the robber was reportedly wearing a "flesh-colored" mask and gloves, identified the robber as a white male, but Defendant is African-American. The mail carrier could not identify Defendant in a line-up. The weight of the evidence does not seem overwhelming, but it is the least important factor in the Court's analysis. *See Motamedi*, 767 F.2d at 1408.

**B. The History and Characteristics of the Defendant and the Nature and Seriousness of the Danger to Any Person or the Community**

Defendant is 35 years old. He has lived in Oakland, California, for his entire life, except for one year when he lived in Patterson, California. He has family members in the area with whom he maintains regular contact, including his mother, half-brother and half-sister, and grandparents. Defendant also has two children that live in Oakland, and a girlfriend and two

children that live in Hayward, California.  However, Defendant's girlfriend, whom he has been in an on and off relationship with since 1998, has an active restraining order against him.

Defendant has his GED.  He was attending WyoTech in Fremont, California, until one week prior to his arrest, when he withdrew from the program.  He is unemployed; previously, he did landscaping and was a handy man, an iron worker and a security guard, and worked at Harrison House and at various fast food restaurants.  He did not report any mental or physical health problems.  He last used alcohol and marijuana in 1998.

Defendant's mother and grandparents indicated that they were willing to assist Defendant with bail and to post property on his behalf.  Defendant's mother stated that she was willing to serve as Defendant's custodian, and that he could reside at her home in Antioch.

Defendant's criminal record includes, notably, a felony conviction in 1999 for assault with a firearm on a person.  According to the police report, Defendant was hopping between backyards and a bystander asked him what he was doing.  Defendant replied that he should "mind his own business" and shot at the individual six times, hitting him twice.  As a result of this conviction, he was incarcerated for 6 years.  In 2007, the year after he got out of prison, he was arrested for whipping his children with a belt.  According to the police report, two of the children said that Williams hit them with the belt, and one child stated that his father punched him in the mouth.  The next year, Williams was arrested for assault.  He was convicted of misdemeanor battery for attacking his girlfriend's friend, causing several scratches and lacerations.  In 2009, Defendant failed to appear for court proceedings.

As noted above, Defendant has a history of violence.  In the past, he shot a person without provocation.  He is now charged with robbing a number of banks while pointing a semi-automatic firearm at bank tellers.  Such facts show that Defendant may have a propensity for violence that has not lessened over time.  In addition, his girlfriend, who has known him for fourteen years, and is the mother of two of his children, has had an active restraining order against him since 2009.  Notably, although the restraining order has not expired, Defendant admitted that he had been in violation of it by staying at his girlfriend's home.

In light of the above evidence, the Court finds that Defendant has failed to rebut the presumption of detention. The Court finds by clear and convincing evidence that Defendant is a danger to the community, and to his girlfriend, and that no condition or combination of conditions in 18 U.S.C. § 3142(c) will reasonably assure the safety of the community. 18 U.S.C. § 3142(e) and (f); *Motamedi*, 767 F.2d at 1406. Accordingly, Defendant shall be detained.

### III. CONCLUSION

For the reasons set forth above, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

DATED: August 20, 2012

KANDIS A. WESTMORE
United States Magistrate Judge